Walter HASSELBLAD and Marie Hasselblad, d/b/a Hasselblad Machine Company, Plaintiffs-Appellants,

v.

CITY OF GREEN BAY, Defendant-Respondent.

Court of Appeals

*No. 87–2261. Orally argued May 9, 1988.—Decided June 7, 1988.*

(Also reported in 427 N.W.2d 140.)

For appellants there were briefs and oral argument by *George Burnett* and *Liebmann, Conway, Olejniczak & Jerry, S.C.,* Green Bay.

For respondent there was a brief by *Timothy J. Kelley,* city attorney, and *James M. Kalny,* assistant city attorney, and oral argument by *Timothy J. Kelley,* Green Bay.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.   The plaintiffs, Walter and Marie Hasselblad, d/b/a Hasselblad Machine Company, seek to have declared unconstitutional the Wisconsin statute setting a $50,000 limit on business replacement damages in eminent domain proceedings. They claim that the limit is contrary to art. I, sec. 13, of the Wisconsin Constitution, which provides: "The property of no person shall be taken for public use without just compensation therefor." Because the Hasselblads

have failed to demonstrate the statute unconstitutional beyond a reasonable doubt, we affirm.

The Hasselblads were business partners whose commercial location was acquired by the City of Green Bay through eminent domain in order to complete a street expansion project. The city paid $140,000 for the fair market value of the property and its improvements, $82,000 for relocating expenses, and $50,000 toward a total business replacement expense of $126,000 in connection with the Hasselblads' reestablishment at a new location. The $50,000 represents maximum replacement damages permitted by sec. 32.19(4m), Stats. The city concedes in this case that the type of damages contemplated under sec. 32.19(4m) exceeded $50,000, even after adjustments for a larger replacement facility.

Section 32.19(4m)(a)1 provides in part:

> Business or farm replacement payment. ... In addition to amounts otherwise authorized ... [t]he condemnor shall make a payment, not to exceed $50,000, .... which, when added to the acquisition cost of the property (other than any dwelling on the property) equals the reasonable cost of a comparable replacement business ....

The statutes do not otherwise define business replacement payments. The parties agree that the replacement expenses in this case were largely incurred to meet new building codes. Although a portion of the expenses were in dispute, in view of the stipulation that more than $50,000 was attributable to replacement expense and not covered by other payments, we need not resolve the disputed difference. Both sides moved for summary judgment. The trial court ruled in favor of the city.

In reviewing summary judgments, we apply the same methodology as the trial court, which has been so often stated we need not repeat it. *See Preloznik v. City of Madison,* 113 Wis. 2d 112, 115–16, 334 N.W.2d 580, 582–83 (Ct. App. 1983). If the facts are not disputed, we decide the legal issues. Section 802.06, Stats. The constitutionality of a statute is a question of law that we review de novo. *Quinn v. Town of Dodgeville,* 120 Wis. 2d 304, 307, 354 N.W.2d 747, 749 (Ct. App. 1984). The burden is on one who challenges the constitutionality of a statute to show such invalidity beyond a reasonable doubt. *Meier v. Purdun,* 94 Wis. 2d 558, 567, 288 N.W.2d 839, 844 (1980). All legislative acts are presumed constitutional, and any doubt must be resolved in favor of constitutionality. *Sambs v. City of Brookfield,* 97 Wis. 2d 356, 370, 293 N.W.2d 504, 511 (1980).

The Hasselblads rely on *Luber v. Milwaukee County,* 47 Wis. 2d 271, 177 N.W.2d 380 (1970). *Luber* declared a former statute that set a twelve-month limit for rental losses caused by condemnation violative of art. I, sec. 13, of the Wisconsin Constitution. Because *Luber* characterized the rental damages as "incidental" or "consequential," it eliminated the former bright line between awards for damages for fair market value and denial of consequential damages in eminent domain cases. There is good reason to conclude, however, that *Luber* does not constitutionally mandate unlimited recovery for all consequential damages in eminent domain actions.

First of all, *Luber,* a four-to-three decision, was a radical departure from the prevailing view on damages. "[T]he rule of no recovery for incidental or

consequential damages has always prevailed in this country ...." *Id.* at 278, 177 N.W.2d at 384. The United States Supreme Court has always held such losses not compensable. *Id.* at 277, 177 N.W.2d at 383 (citing Mr. Justice Douglas in *United States v. General Motors Corp.,* 323 U.S. 373, 385 (1945)). It seems appropriate, therefore, absent a broader mandate from our supreme court, to construe *Luber* narrowly.

In fact, several years after *Luber,* our supreme court said:

> *Luber* ... is ... limited to its holding that the twelve-month limit as to rent losses ... was constitutionally invalid. It is true, as *Luber* noted, that when property is taken by condemnation 'incidental damages are very apt to occur.' That is not to say that a cause of action for compensation for incidental damages has been created that has no basis or relatedness to the items made compensable by sec. 32.19, Stats.

*Rotter v. Milwaukee County Expwy. & Transp. Comm'n,* 72 Wis. 2d 553, 562, 241 N.W.2d 440, 445 (1976) (quoting *Luber,* 47 Wis. 2d at 280, 177 N.W.2d at 385). Since the legislation creating rights to business replacement costs, sec. 32.19(4m), first took effect in 1978,[1] *Rotter,* decided in 1976, suggests those costs are not constitutionally required.

Even Nichols, Law of Eminent Domain, which views *Luber* as "truly, a landmark decision," 4A Nichols, Law of Eminent Domain, sec. 12.3151[5] at 12–507 (J. Sackman rev. 3d ed. 1985), apparently does not read it as imposing liability for business replacement costs. In a discussion of consequential damages for the expense of replacing condemned property, the

---

[1]Sections 11 and 16, ch. 440, Laws of 1977.

author observes: "Although such element [cost of obtaining new quarters] has been recognized as compensable in England, ... [t]he few cases which have been found [in this country] ... are unanimous in rejecting such element of cost." *Id.,* sec. 14.22 at 14–516 (footnotes omitted).

Finally, there is a rational basis for distinguishing *Luber.* Rental losses bear a direct relationship to fair market value that business replacement expenses do not. This distinction was recognized by the California Supreme Court in *Klopping v. City of Whittier,* 500 P.2d 1345, 1357 n. 7 (Cal. 1972):

> The Wisconsin Supreme Court characterized the damages suffered by the appellant in *Luber* as "incidental." This is accurate in the sense that they are not occasioned by the fact of condemnation but on activity engaged in by the public agency prior to condemnation. However, we note that recovery of lost rental income relates directly to the fair market value of the property and hence is distinguishable from such traditional incidental damages as, for example, moving expenses.

For the foregoing reasons, we decline to extend *Luber* beyond its factual setting.

*By the Court.*—Judgment affirmed.